**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pinal County,<br><br>    Plaintiff,<br><br>vs.<br><br>United States of America,<br><br>    Defendant. | No. CV-09-00917-PHX-NVW<br><br>**ORDER** |

In this quiet title action pursuant to 28 U.S.C. § 2409a, Plaintiff Pinal County seeks a determination that its property interest in San Pedro Road in Pinal County, Arizona, is superior to Defendant United States' competing conservation easement. Now before the Court are the parties' cross motions for summary judgment (Docs. 34, 35). For the following reasons, Pinal County's motion is granted and the United States' motion is denied.

**I.    Legal Standard**

Summary judgment is warranted if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must produce sufficient evidence to persuade the Court that there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Conversely, to defeat a motion for summary judgment, the nonmoving party must show that there are genuine issues of

material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact is one that might affect the outcome of the suit under the governing law, and a factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party would bear the burden of persuasion at trial, the moving party may carry its initial burden of production under Rule 56(c) by producing "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1105-06; *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).

When the moving party has carried its burden under Rule 56(c), the nonmoving party must produce evidence to support its claim or defense by more than simply showing "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.* The nonmoving party's evidence is presumed to be true and all inferences from the evidence are drawn in the light most favorable to the nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987). If the nonmoving party produces direct evidence of a genuine issue of material fact, the motion for summary judgment is denied. *Id.*

**II.     Facts**

San Pedro Road, the property at issue in this case, crosses the San Pedro River in Pinal County, Arizona, near the town of Dudleyville. In 1994, the property surrounding

what was to become the San Pedro Road river crossing was owned by George Gordon. After a 1993 flood washed out the Romero Bridge, an alternative river crossing, Gordon granted a Temporary Highway Easement ("Highway Easement") to Pinal County for the construction and maintenance of a public highway, including a river crossing, across Mr. Gordon's property "until the construction of a new bridge across the San Pedro River."[1] According to the terms of the Easement Agreement, executed on December 15, 1994, the Highway Easement is automatically renewed for additional one-year periods "unless written notice is given by either party, on or before December 1 of any year, of an intent not to renew the Agreement." The Agreement is binding on George Gordon, Pinal County, and their heirs, successors, assigns, and legal representatives.

Sometime prior to March 1996, Gordon transferred title to his property to Jean and Eric Schwennesen in fee simple. On March 1, 1996, the Schwennesens conveyed a perpetual conservation easement ("Conservation Easement") over approximately 215 acres of the property to the Nature Conservancy, a District of Columbia non-profit corporation, in exchange for $140,000.

According to Clause 1 of the Deed of Conservation Easement, which makes no mention of the Highway Easement, the purpose of the Conservation Easement is to "assure that the Property will be retained forever in open space to provide for a diversity of wildlife habitat, education and agriculture and to prevent any use of the Property that will significantly impair or interfere with these values." Clause 3 therefore grants to the Nature Conservancy the right to "prevent any activity on or use of the Property that is inconsistent with the purpose of this easement . . . ." Clause 2, however, reserves to the Schwennesens the right to "engage in or permit or invite others to engage in all uses of the Property that are not expressly prohibited herein and are not inconsistent with the purpose of [the Conservation Easement]." Finally, Clause 11 provides that the covenants, terms, conditions, and restrictions of the Conservation Easement are binding on the

---

[1]To date, Pinal County has not constructed a new bridge across the San Pedro River.

- 3 -

parties and their heirs, successors, assigns, and personal representatives, and that interpretation of the Deed is governed by Arizona law.

In addition to the above terms, one of the Deed's recitals states that certain Baseline Documentation, completed in February 1996 and attached to the Deed as Exhibit C, provides "an accurate representation of the Property at the time of this grant and is intended to serve as an objective information baseline for monitoring compliance with the terms of this grant." The Baseline Documentation generally notes some of the ecological features of the Schwennesens' tract and describes the ecological significance of the Conservation Easement. It also notes the following "existing developments" on the property:

> The most dominant man-made features on this tract are the Dudleyville Crossing; the Magma Copper Company railway spur; the ASARCO water line; the county maintained dirt road that runs from the crossing downstream; utility lines along the county road and the cleared fields and pastures on the northwestern side of the property.

The parties agree that "Dudleyville Crossing" refers to the San Pedro Road river crossing.

On April 21, 1997, the Nature Conservancy assigned "all of the Conservancy's rights and obligations as described in the Conservation Easement" to the Bureau of Land Management ("BLM"), a bureau of the United States Department of the Interior. The assignment expressly requires the BLM "to carry out and enforce the conservation purposes of the Conservation Easement."

Years later, in mid-2007, Paul Schwennesen, the Schwennesens' son, sent a letter to the Pinal County Board of Supervisors purporting to terminate the Highway Easement. The letter, which was signed only by Paul Schwennesen, stated:

> Regarding the "Temporary Highway Easement Agreement" (Docket 2072, Page 853), signed 15 December, 1994, it is our intent as current property owner of parcel 300-27-005A to end such Easement Agreement.
>
> In consideration of the significant increase in traffic, especially off-highway vehicle traffic, and its detrimental impact on the sensitive riparian zone we feel that such a highway easement has outlived its benefit to the public health, safety, and welfare of the community.
>
> Additionally, as this easement was signed with the understanding that its temporary nature was to allow time for "construction of a new bridge across

- 4 -

> the San Pedro River" (page 1, para. 2), and no effort has been made to construct such bridge, the utility in maintaining this easement is diminished significantly.

Both Eric and Jean Schwennesen later signed the bottom of a copy of the letter, on which was written, "Letter Sent 13 June Ratified By Eric and Jean Schwennesen." However, none of the Schwennesens, including Paul, can recall when Eric and Jean signed the letter or whether a copy of the signed letter was ever sent to the County.

On August 15, 2007, Gregory Stanley, a Pinal County Public Work Director, issued a response letter explaining that San Pedro Road "has been in existence for approximately 25 years" and that closure of the road "could result in serious issues for emergency response vehicles, and seriously impair the ability to respond to fires and natural disasters in the eastern portions of Pinal County." Stanley therefore proposed a meeting "to see if there are some other measures we might be able to take in order to avoid the closure."[2] That same day, Stanley sent a letter to the BLM relaying Paul Schwennesen's attempt to close the road and seeking the BLM's assistance in keeping the road open. The letter explained that San Pedro Road "is widely used by the community of Dudleyville and other outlying citizens to cross the San Pedro River" and there is "no other public access in Pinal County's system to cross the San Pedro River."

On February 13, 2008, Pinal County filed a state court condemnation action against Jean and Eric Schwennesen, Paul and Sarah Schwennesen, and the Nature Conservancy to acquire whatever interest they held in a roughly 2.025-acre parcel of land over which the San Pedro Road passes. In a June 24, 2009 stipulated judgment, Pinal County received from the Schwennesens "any and all" interest they held in the property in exchange for the sum of $90,000. Pinal County now seeks to quiet title in its right to maintain and permit public access to San Pedro Road, closure of which had not been contemplated until the Schwennesens suggested it to, or requested it of, the BLM

---

[2]No evidence has been presented of an actual meeting between the County and any of the Schwennesens.

sometime prior to entry of the stipulated judgment in the County's condemnation action. Specifically, Pinal County seeks to remove the cloud on its right caused by the United States' conflicting claim under the Conservation Easement.

**III. Analysis**

In support of its position, Pinal County contends that it has a superior right to control access to San Pedro Road pursuant to A.R.S. § 28-7041(C). Alternatively, it argues that the United States acquired its rights under the Conservation Easement subject to the Highway Easement, and because the Highway Easement is still in force, the County has a superior right to control access to the road. Finally, the County maintains that even if it acquired title to the property subject only to the Conservation Easement, it may continue to permit public access to the road without violating the terms of the Conservation Easement.[3]

The United States counters that A.R.S. § 28-7041(C) provides no basis for finding in the County's favor. It further maintains that Paul Schwennesen effectively terminated the Highway Easement in 2007, such that the County's condemnation judgment acquired title to the road subject to the Conservation Easement, which purportedly permits the United States to deny public access to the road. Each of the parties' contentions is addressed in turn.

**A.    A.R.S. § 28-7041(C)**

Pinal County argues that prior to the Schwennesen's creation of the Conservation Easement, it acquired a superior right to allow public access to San Pedro Road pursuant to A.R.S. § 28-7041(C), which provides:

>  All highways, roads or streets that have been constructed, laid out, opened,

---

[3] In further support of its position, the County has submitted documentary evidence that, according to the County, shows the BLM did not believe it was acquiring any right to control access to San Pedro Road at the time it received all of the Nature Conservancy's rights under the Conservation Easement. Though such evidence may have substantial persuasive force, the Court finds it unnecessary to address the evidence in light of the following analysis.

> established or maintained for ten years or more by the state or an agency or political subdivision of the state before January 1, 1960 and that have been used continuously by the public as thoroughfares for free travel and passage for ten years or more are declared public highways, regardless of an error, defect or omission in the proceeding or failure to act to establish those highways, roads or streets or in recording the proceedings.

While no Arizona courts appear to have interpreted A.R.S. § 28-7041(C) specifically, the Supreme Court of Arizona has interpreted its predecessor, A.R.S. § 28-1861(B), a substantially similar provision. *See State ex rel. Miller v. Dawson*, 175 Ariz. 610, 858 P.2d 1213 (1993).

In *Dawson*, the court was asked to decide whether A.R.S. § 28-1861 transfers title to land used for qualifying roadways from private property owners to the state. 175 Ariz. at 611, 858 P.2d at 1214. The court began its analysis with a long-standing principle of Arizona common law that the state cannot acquire title to highways and other roads by prescription. *Id.* at 612, 858 P.2d at 1215. Rather, the state must generally follow procedures established by statute. *Id.* (citing *State ex rel. Herman v. Electrical Dist.*, 106 Ariz. 242, 243, 474 P.2d 833, 834 (1970)). Finding no indication that the Arizona legislature intended to alter that long-standing principle by enacting A.R.S. § 28-1861(B), the court found the statute to be merely curative in nature, operating only to remedy technical deficiencies in the state's attempt to acquire title through purchase, condemnation, or compliance with other statutory procedures. *Id.* at 613, 858 P.2d at 1216. For example, it cures "any ultra vires problem previously existing where the state had been expending public monies on what were technically not public roads." *Id.* Therefore, the statute provides no independent basis for transferring title from private property owners to the state or, for that matter, anyone else.

Pinal County concedes that under *Dawson*'s interpretation, it did not acquire title to San Pedro Road under the statute. It maintains, however, that the statute gave the *public* a right of access to the road. The argument is unavailing. First of all, nothing in the language of the statute suggests the public somehow acquires an automatic right to access a roadway on private property simply by using it. The public has a right to access

a roadway only to the extent the owner of the property on which the road passes, be it the government or a private party, grants access. Second, *Dawson* makes clear that the curative effects of the statute apply only to attempts by the state, or a political subdivision thereof, to establish public highways through statutorily permitted means. As the County has presented no evidence that it ever attempted to acquire title to the road before the Highway Easement was created, the curative effects of A.R.S. § 28-7401(C) do not add property interests any greater than those later acquired under the Highway Easement and the condemnation judgment.

### B. The Highway Easement

The argument that Pinal County has a superior right to control access to San Pedro Road by virtue of the Highway Easement requires a brief examination of well-established principles of easement creation and termination. An easement "is a right that one person has to use the land of another for a specific purpose." *Ammer v. Ariz. Water Co.*, 169 Ariz. 205, 208, 818 P.2d 190, 193 (Ct. App. 1991) (citing *Etz v. Mamerow*, 72 Ariz. 228, 233 P.2d 442 (1951)). The property burdened by the easement is the servient estate. *See* Restatement (Third) of Property: Servitudes § 1.1(1) (2000). The owner of the servient estate may create an easement by entering into an agreement, which may or may not include terms governing modification and termination of the easement. *Id.* §§ 2.1(1), 7.1.

In this case, George Gordon created the Highway Easement by entering into the Easement Agreement with Pinal County. The Agreement provides for automatic renewal for additional one-year periods "unless written notice is given by either party, on or before December 1 of any year, of an intent not to renew the Agreement." Therefore, the Highway Easement is terminable only by written notice from either party.

The only evidence of an attempt by either party to terminate the Highway Easement is the letter sent by Paul Schwennesen, the Schwennesens' son, in or around August 2007. Though the letter uses language such as "our intent" and "we feel," it was signed only by Paul Schwennesen. Because Paul Schwennesen was not one of the original parties to the Easement Agreement, he was not authorized by the Agreement to

terminate the Highway Easement unless he qualified as an heir, successor, assign, or legal representative of Gordon or Gordon's heirs, successors, assigns, or legal representatives. Because the Schwennesens, Gordon's successors, were still alive at the time the letter was sent, Paul did not qualify as an heir. *See* A.R.S. § 14-1201(23) (defining "heirs" as those entitled to the property of a "decedent" under the laws of intestate succession). Furthermore, there is no evidence that the Schwennesens conveyed title to the property to Paul, assigned their interests under the Easement Agreement to him, or appointed him as their legal representative. Therefore, Paul Schwennesen did not have authority under the Agreement to terminate the Highway Easement. The United States does not contend to the contrary.

There was also no effective ratification of Paul Schwennesen's attempted termination of the Highway Easement. There is evidence that Eric and Jean Schwennesen attempted to ratify the purported termination by signing the bottom of a copy of the letter, but none of the Schwennesens can recall when it was signed and, more importantly, whether it was signed before the County's institution of condemnation proceedings. To be effective, a ratification must be sufficiently timely to avoid adverse and inequitable effects on the rights of third parties. *See* Restatement (Third) of Agency § 4.05 (2006). Any attempt to ratify the termination during the condemnation proceedings would have adversely and inequitably affected the County's prospective rights and property interests in the road. In any event, the United States does not argue that the purported ratification was effective.

The only argument the United States appears to be making in support of the termination is that the County waived any objection to the legal sufficiency of Paul Schwennesen's purported termination letter by responding to the letter as if it were effective and by requesting the assistance of the BLM in keeping the road open. The argument is rejected on two grounds. First, the United States has provided no legal authority whatsoever to support the implied argument, and second, waiver of any legal deficiency in a termination or revocation letter requires "voluntary intentional

relinquishment of a known right or conduct that would warrant an inference of such intentional relinquishment." *Havasupai Tribe v. Ariz. Bd. of Regents*, 220 Ariz. 214, 224, 204 P.3d 1063, 1073 (Ct. App. 2008) (citing *Am. Cont'l Life Ins. Co. v. Ranier Constr. Co.*, 125 Ariz. 53, 55, 607 P.2d 372, 374 (1980)). There is no evidence that the County contemplated and deliberately ignored the possibility that the termination was legally ineffective at the time it responded to the letter and requested the BLM's assistance. Its actions are indicative of no more than an attempt to keep the road open without resort to legal proceedings, at which point the legal sufficiency of the letter would be at issue.

The Court therefore concludes that the Highway Easement was never effectively terminated and is now permanent as a result of the County's condemnation of the underlying fee interest in general and the power to terminate the Highway Easement in particular. As the priority order of the two easements is beyond dispute, the County acquired a fee interest in the San Pedro Road river crossing subject to the Conservation Easement, which yields to the Highway Easement. The Highway Easement was not extinguished by the condemnation proceeding because the very purpose of the proceeding was to ensure the continuation of the benefits of the Highway Easement. *See* Restatement (Third) of Property: Servitudes § 7.8 (2000) ("Condemnation of the benefit of a servitude in the exercise of the power of eminent domain modifies or extinguishes the benefit only if that is the purpose of the condemnation."). Therefore, the County has all of the rights under the Highway Easement, including the right to control public access to the road.

**C. The Conservation Easement**

Even assuming the Highway Easement was effectively terminated, the Conservation Easement permits the County to continue vehicular access to San Pedro Road and its river crossing. It is undisputed that the County acquired all of the Schwennesens' interests in San Pedro Road as a result of the condemnation proceeding. Those rights include all of the Schwennesens' rights as grantors under the Conservation Easement. Whether the County may continue vehicular access to the crossing therefore turns on the rights of the grantor vis-à-vis the grantee under the terms of the Deed of

Conservation Easement.

The Deed of Conservation Easement expressly provides that its interpretation is governed by Arizona law. In Arizona, contract interpretation is an issue of law. *Ariz. Biltmore Estates Ass'n v. Tezak*, 177 Ariz. 447, 448, 868 P.2d 1030, 1031 (Ct. App. 1993). When construing an agreement under Arizona law, a court must, whenever possible, give effect to the intent of the parties at the time the agreement was made. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 153, 854 P.2d 1134, 1139 (1993). Therefore, the understandings of the Schwennesens and the Nature Conservancy are relevant here.

As explained, one of the Deed's recitals incorporates certain Baseline Documentation by reference. The Documentation, which was completed a month prior to and in preparation of the Deed's execution, specifically notes the following existing developments and uses on the property:

> The most dominant man-made features on this tract are the Dudleyville Crossing; the Magma Copper Company railway spur; the ASARCO water line; the county maintained dirt road that runs from the crossing downstream; utility lines along the county road and the cleared fields and pastures on the northwestern side of the property.

The parties agree that "Dudleyville Crossing" refers to the San Pedro Road river crossing. Both the Schwennesens and the Nature Conservancy were therefore aware, prior to execution of the Deed, that the San Pedro Road river crossing fell within the boundaries of the land to which the Conservation Easement would apply.

The Deed recital that references the Baseline Documentation sheds light on the parties' understandings of the role to by played by the Baseline Documentation and how the Conservation Easement would affect the road and crossing. According to the recital, the Documentation provides "an accurate representation of the Property at the time of this grant and is intended to serve as an *objective information baseline* for monitoring compliance with the terms of this grant." (emphasis added). That the information in the Documentation was intended, by both parties, to be a starting point against which future compliance would be monitored indicates the parties did not anticipate any changes to

- 11 -

what had been described in the Documentation as *existing* developments and uses.

Such an interpretation is further supported by the rather practical observation that had the parties intended for the Deed to require an action as onerous as closing what had for many years been a publicly-accessed road, such action would have been addressed expressly. That the road was not even mentioned in the Deed strongly suggests the parties did not contemplate the road's inclusion within the scope of the restrictions of the Conservation Easement.

The Court therefore concludes that the existing developments referenced in the Baseline Documentation, including San Pedro Road and its river crossing, were carved out and excluded from the restrictions of the Conservation Easement. It naturally follows that the Schwennesens did not grant to the Nature Conservancy, and therefore the United States, any power to interfere with those existing uses. Even if the Highway Easement was effectively terminated, the County, as fee owner of the property, retains the power to reinstate the Highway Easement at any time. As such, the County has a superior interest in the river crossing and the portion of San Pedro Road that crosses the Schwennesens' land. It has the property right, notwithstanding the terms of the Conservation Easement, to allow continued public access to the road and its river crossing.

IT IS THEREFORE ORDERED that Plaintiff Pinal County's Motion for Summary Judgment (Doc. 35) is granted and Defendant United States' Motion for Summary Judgment (Doc. 34) is denied.

IT IS FURTHER ORDERED that Plaintiff Pinal County submit by September 17, 2010, a form of proposed quiet title judgment.

DATED this 2nd day of September, 2010.

Neil V. Wake
United States District Judge